**NOT RECOMMENDED FOR PUBLICATION**
File Name: 07a0154n.06
Filed: February 26, 2007

No. 05-4496

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**


TONY DAWOOD,                   )
                                       )
     Petitioner,            )
                                       )
v.                                )   **ON PETITION FOR REVIEW FROM**
                                     )   **THE BOARD OF IMMIGRATION**
ALBERTO R. GONZALES,       )   **APPEALS**
                                       )
     Respondent.          )
                                       )
                                       )


**BEFORE:**     BOGGS, Chief Judge; MERRITT and MOORE, Circuit Judges


      **MERRITT, Circuit Judge.** In this asylum case, the petitioner, Tony Dawood, a Chaldean

Christian and watch repair store owner from Baghdad, seeks reversal of a Board of Immigration

Appeals decision of November 1, 2005, dismissing his appeal from an oral decision of an

Immigration Judge on April 30, 2004. The judge found that Dawood lied about his reasons for

fleeing Iraq in February 2002 (before Saddam's overthrow) and further found that Chaldean

Christians are not "singled out for persecution by any group in Iraq." In his oral opinion, Judge Paul

A. Defonzo states that he does not believe the petitioner's testimony because of its inconsistencies.

He finds "this testimony to simply be amazing and completely inconsistent," and petitioner to be

completely incredible. In addition, the IJ finds that now that Saddam has been overthrown "there

is no information or documentation that would lead it [the court] to believe that Christian or ethnic

Chaldeans are singled out for persecution by any group in Iraq."

In order to prevail, Dawood must establish refugee status by showing that he is unwilling to

return to his home country due to "persecution or a well-founded fear of persecution on account of

race, <u>religion</u>, nationality, membership in a particular social group, or political opinion." 8 U.S.C.

§ 1101(a)(42)(A) (emphasis added). We review such administrative decisions under a substantial

evidence test after giving due deference to the credibility determinations of the IJ. We conclude in

this case that the record lacks substantial evidence to support the findings and conclusions of the

administrative agency and that the credibility findings of Judge Defonzo are inconsistent with the

record.

The record describes Dawood's flight from Iraq through Turkey, then to Spain, and on to

Mexico and then across the border into the United States. There he was immediately arrested on

April 20, 2002, when he crossed the border. In his first statement at the border, he says in answer

to a question about prior arrests:

> I owned a watch repair store in Iraq and one day a ranking member of the Baath Party
> came into the store and wanted to take it over. I did not want to give up the store so
> we got into a fight. I was then arrested and beaten by the man and then released. I
> was constantly followed and monitored very closely.

On the same day, Dawood was interviewed by an immigration official, whose report of Dawood's

answer to a question about his reasons for fearing persecution in Iraq states:

> Alien testified that a leader of the Baath Party went to this shop and ordered him to
> turn over his watch repair business for himself. Alien refused because that was his
> only way to support himself and his parents. On February 1, 2000, the guards of his
> Baath leader went to his shop and ordered alien to go with them. Again he was

ordered and threatened to transfer his business to him but he continued to refuse. Alien claimed that he was attacked, beaten and he was told to think about it. After two or three days later [sic] the guards of the Baath leader returned to his shop and took alien with them. Once again he was threatened to surrender the shop but he refused. Alien was beaten and kicked for the second time. He tried to fight and cursed the Baath Party. He managed to escape and went into hiding at his sister's house. The Baath were looking for him and wanted to arrest him for cursing the Party. With the help of his father, alien fled to the United States to avoid being killed or arrested by the Baath Party. (App. 257.)

Two weeks later on May 5, 2003, he filed an application for asylum. In that application he again described the reason for his flight:

Also I suffered much physical pain and mental anguish at the hands of Muslims, the Iraqi security police, and the Baath Party, to last me a lifetime and beyond. I can't even bear to think about going back, and having to live with such prejudice, and hateful people as the Muslim people of Iraq. In January 2002, a high ranking member of the Baath Party came to my shop and ordered me to turn over my business to him. I refused, telling him that the business was my only means of support of myself and family. On 02/01/2002, and 02/04/2002, I was detained, taken to Baath Party headquarters, threatened, kicked and badly beaten for refusing to surrender my business to high ranking Baath Party officials. (App. 269.)

At his hearing Dawood testified by video from Detroit to the immigration judge in New York. He testified that members of the Baath Party first came to his shop in early January of 2002 and started interrogating him. They wanted to know details about his shop and why he was not a member of the Baath Party, and, according to him, "they wanted to extort my place of business and the premises." He did not agree. He further testified that they arrested him on February 1, 2002, when he refused to turn over his shop to them. They took him to the Baath Party headquarters in Baghdad where they beat him and told him that he had to vacate his shop calling him "a Christian infidel." He testified that he was detained for "three days" during which time he was beaten. They then released him on February 4, 2002, and said that they were going to "give me several days to

3

think about the matter." He testified that the next day they came back and he refused to turn the shop over to them "because it was the only source of income for my family." "Two armed people" came and "they ordered me to lock, to shut down the place of business and escort them." They took him back to the local Baath Party office where they "punched me and spit in my face and calling me crusader and a Christian infidel." He finally escaped "out of desperation, I beat one of them, pushed them off, and I started cursing the government and the Baath Party and I fled because I knew that my fate would be the same as my brother." In fleeing he took a taxi cab, and "I went over to my sister's house in Baghdad." He explained how he went over a fence and ran through the streets of Baghdad before catching a taxi.

Judge Defonzo appears to concede that Dawood owned a watch repair store in Baghdad, but he asserted at the trial that:

> There is nothing here about being rearrested. There is nothing here about fleeing .
> . . . Why did you leave all that out when they questioned you at the border? (App.
> 141.)

Dawood's statements at the border (quoted above) clearly communicate that Dawood was rearrested, escaped and fled. We fail to see a serious inconsistency in Dawood's statement at the border and in his application for asylum with his statement at the video hearing. Dawood was questioned in more detail at the hearing, and he revealed more details about his treatment by Baath Party officials and his escape and flight from Baath Party headquarters. But we do not regard Dawood's previous descriptions of his treatment as basically inconsistent with his testimony at the hearing. Although Dawood did not explain in his earlier statements exactly how he managed to escape from Baath Party headquarters and flee across town, his testimony at the hearing is not inconsistent with the more

4

general statements that he made about escaping in his earlier statement. His earlier statements about

his reasons for leaving Baghdad and coming to the United States are consistent with the reasons

given at his hearing. We, therefore, conclude that the decision of the Board of Immigration Appeals

upholding the credibility ruling of the IJ is not supported by substantial evidence.

We also note that both the government in its brief and the administrative agency have

asserted that there is no reason to believe that Chaldean Christians have a reasonable basis to fear

persecution in Iraq today. On remand, the Board should review and reconsider this argument based

on current conditions in light of the conditions described in the Department of State country report

on Iraq in 2004 (http://www.state.gov/g/drl/rls/hrrpt/2004/41722.htm). That report states in part:

> There were numerous incidents of violence against the Christian community this
> year, ranging from individual killings to intimidation . . . . The number of Christians
> leaving the country rose, after bombings of 14 churches in Baghdad and Mosul and
> the Chaldean Bishop's palace in Mosul from August through December. The
> bombings left 43 dead and 340 injured, as well as damaging the churches.

 The press has reported that these attacks against Christians have continued. *See*, *e.g.*, Michael Luo,

*Iraq's Christian Minority Flees as Extremist Threat Worsens*, N.Y. Times, October 17, 2006;

Allison Hoffman, *U.S. Iraqi Christian community debates how to help relatives facing sectarian*

*violence abroad*, Associated Press, December 15, 2006.

Our court heard oral argument in this case on January 23, 2007, but only from counsel for

petitioner. Although notified well in advance of the argument, counsel for the government from the

Department of Justice failed to appear. The court, therefore, did not have the opportunity to question

government counsel concerning whether the government continues to support the position of the

Immigration Judge and the Board of Immigration Appeals that there is no documentation supporting

5

"a well-founded fear of persecution on account of . . . religion," 8 U.S.C. § 1101(a)(42)(A), by

Chaldean Christians in Iraq.  The Board should thoroughly re-review this question on remand, and

the Department of Justice should revise its procedures so that such mistakes in providing

representation do not recur.

Accordingly, it is so ordered.